UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS DOUGLAS SCOTT,<br><br>　　　　　Petitioner,<br><br>　　　v.<br><br>MULE CREEK STATE PRISON, et al.<br><br>　　　　　Respondents. | CASE NO. ED CV 07-909 SVW (PJW)<br><br>ORDER ACCEPTING & AUGMENTING FINAL REPORT AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE AND GRANTING, IN PART, AND DENYING, IN PART, CERTIFICATE OF APPEALABILITY<br><br>JS6 |

**I.　Introduction**

　　Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition, the records on file and the Final Report and Recommendation of United States Magistrate Judge Patrick J. Walsh and has considered the *de novo* portions of the Report as to which objections have been filed. The Court is issuing this supplemental order to augment some points in Magistrate Judge Patrick J. Walsh's Final Report and Recommendation

submitted May 11, 2010, recommending the denial of Thomas D. Scott's ("Petitioner") habeas petition ("the petition").  The Court addresses Petitioner's allegation of Prosecutorial Misconduct under a more appropriate legal standard and ultimately agrees with Magistrate Judge Walsh's conclusion.  Additionally, in response to Petitioner's allegation of a Sixth Amendment violation, the Court clarifies the Confrontation Clause's applicability to certain evidence admitted at Petitioner's trial and ultimately agrees with Magistrate Judge Walsh's denial of Petitioner's claim.  The Court adopts the remaining portions of the Report and Recommendation.

**II. Petitioner's Challenges**

    **a. Ground II: Prosecutorial Misconduct - The Use of False Testimony**

In Ground II of the petition, Petitioner claims the prosecutor committed "prejudicial misconduct" by allowing the victim, Haidar Sallah ("Sallah"), to give false testimony at trial. (Petition at 27-28).  At Petitioner's trial, Sallah testified that he had given a statement to Officer LoBue ("LoBue") on December 3, 2002 regarding Sallah's recollection of the December 3, 2002 robbery.  (RT at 80, 87).  On cross-examination, Sallah testified he remembered telling LoBue that the suspect was wearing black gloves during the robbery.  (RT at 111).  Petitioner claims Sallah's testimony that Sallah had told LoBue that the suspect was wearing black gloves is "false testimony."  (Petition at 27-28).  As evidence of the testimony's falsity, Petitioner points to LoBue's police report, which contains no mention of Sallah reporting to officers that the suspect was wearing black gloves. (LoBue's Police Report pp. 1-5, Petitioner's Exhibit 1).  Petitioner alleges the prosecutor presented the false testimony at trial to help explain why

2

fingerprints had not been found in the store or on the gun. (Petition at 28).

### b. Ground VII: Confrontation Clause Violation

In Ground VII of the petition, Petitioner claims the trial court violated his Confrontation Clause right under the Sixth Amendment when Normal Wallis ("Wallis") was allowed to testify to Dave Reynolds's ("Reynolds") lab report identifying a substance found on Petitioner as cocaine. (Petition at 29, Attachment). Reynolds, a criminalist, had analyzed a substance found on Petitioner. (RT at 180-81). While performing his analysis, Reynolds had prepared "a one-page document that show[ed] the results of tests that were conducted on the substance submitted to the laboratory." (RT at 180). Reynolds's report provided the "name of the criminalist that performed the analysis, the date that it was done, [and] the date that [the substance] was returned back to the locker." (RT at 180). Reynolds died the week before trial and was unavailable to testify. (RT at 179).

At Petitioner's trial, Wallis, over a defense objection, testified regarding the results of the lab tests performed by Reynolds. (RT at 178-98). Wallis was Reynolds's supervisor at the time the testing was performed. (RT at 184). Wallis did not offer his own opinion as to the composition of the material found on Petitioner. (RT at 178-98). Rather, Wallis offered his opinion that Reynolds had followed the proper procedures in analyzing the substance.[1] (RT at 188). Further,

---

[1] The procedure required retrieving the substance from a locked area, following the documented procedures in the analysis of the substance, recording the test results in the correct manner on the note sheet, and then forming a conclusion based upon his test results as to the make-up of the substance. (RT at 185). Wallis testified to the types of tests Reynolds performed including a marquis test, a micro-crystal test, and a thin layer chromatography test. (RT at 185).

3

Wallis revealed Reynolds's conclusion that the substance contained cocaine consistent with base form and had a usable quantity of .26 grams. (RT at 185). Wallis did not review Reynolds's report until after Reynolds had died and Wallis did not personally observe Reynolds performing the tests. (RT at 184-86, 189). It appears that the lab result file itself was never actually admitted into evidence.[2] (RT 178-98; RT 442-444 (discussing the admission of the only documents which were admitted into evidence)).

In 2006, the California Court of Appeal reviewed Petitioner's claim regarding a Sixth Amendment Confrontation Clause violation. The Court of Appeal held there was no Confrontation Clause violation, finding that Wallis's testimony regarding the lab test results and the lab results themselves were properly admitted. (Lodgment No. 5 at 14.)

**III. Discussion**

    **a.   Ground II: Prosecutorial Misconduct - The Use of False Testimony**

Magistrate Judge Walsh recommends denying Petitioner's Prosecutorial Misconduct claim based on the prosecutor's alleged use of false testimony on the grounds that the Petitioner has failed to show the evidence introduced at trial was false. The Court ultimately agrees with this recommendation, however, the Court will briefly

---

[2] There appears to be some confusion regarding whether lab results were admitted into evidence, or whether solely Wallis's testimony based on the lab results was admitted. The trial transcript and trial exhibit list do not include any record of admitting the actual lab results. (Final R&R, Dkt. # 37 at 20; RT 178-98; RT 442-444). However, the California Court of Appeals' analysis assumes that the lab results were admitted. (Lodgment No. 5 at 11-14). For purposes of this Petition reviewing the Court of Appeals' decision, the Court will assume the Court of Appeals correctly determined that the lab results were in fact admitted. The Court notes that in either circumstance, the Court's ultimate outcome would not change.

4

analyze Petitioner's claim under a more appropriate legal standard. Magistrate Judge Walsh cites <u>United States v. Etsitty</u>, 130 F.3d 420, 424 (9th Cir. 1997) as the standard for adjudicating Petitioner's claim of prosecutorial misconduct based on a prosecutor's presentation of "false testimony." (Final R&R, Dkt. # 37 at 14). However, the <u>Etsitty</u> standard is more appropriate where prosecutors have allegedly solicited testimony in a manner to mislead a jury. <u>Etsitty</u>, 130 F.3d at 424. Petitioner's false testimony claim concerns the prosecutor's use of false testimony to convict Petitioner. (Petition at 27-28). A more appropriate legal standard for evaluating a prosecutor's alleged use of false testimony is set forth in <u>Napue v. Illinois</u>, 360 U.S. 264, 269 (1959), which establishes "[A] conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment . . . when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." To prevail under <u>Napue</u>, a petitioner must show that (1) the testimony (or evidence) was actually false; (2) the prosecution knew or should have known that the testimony was actually false; and (3) that the false testimony was material. <u>United States v. Zuno-Arce</u>, 339 F.3d 886, 889 (9th Cir. 2003).

Petitioner cannot show that Sallah's testimony regarding the gloves "was actually false." <u>Zuno-Arce</u>, 339 F.3d at 889. Mere inconsistencies in the evidence do not constitute the knowing use of perjured testimony by the prosecution. <u>Smith v. Clark</u>, No. CV 08-8339-DDP, 2010 WL 480968, at *20 (C.D. Cal. February 2, 2010) (citing <u>United States v. Croft</u>, 124 F.3d 1109, 1119 (9th Cir.1997)). Although Sallah's testimony that he had told LoBue that the robber was

5

wearing black gloves may arguably be characterized as inconsistent with the police report based on the assumption an officer would normally have included such information in his report, Petitioner has certainly not shown that the testimony was actually false.[3]

    **b. Ground VII: Confrontation Clause Violation**

Magistrate Judge Walsh recommends denying Petitioner's Confrontation Clause violation claim on the grounds that the California Court of Appeals was not unreasonable in their determination that evidence at trial was non-testimonial. The Court agrees with this ultimate determination, however, it will augment portions of the Magistrate Judge Walsh's reasoning.

The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. CONST. AMEND. VI. The United States Supreme Court has held that the Confrontation Clause bars the state from introducing out-of-court statements which are "testimonial" in nature, unless the "declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine [the declarant]." Crawford v. Washington, 541 U.S. 36, 59 (2004). The Confrontation Clause's exclusion of evidence rests on the distinction between "testimonial" and "non-testimonial" out-of-court statements. Id. at 51-52. In Crawford, the Court identified any prior testimony or pre-trial statements that a defendant could reasonably expect to be

---

[3] Further, page four of LoBue's report reads: "due to [Sallah's] statements, I formed the opinion that processing for latent fingerprints would have gained negative results." (LoBue's Police Report at 4, Petitioner's Exhibit 1). If anything, LoBue's opinion that a fingerprint gathering would "gain negative results" supports an inference that Sallah *did* tell LoBue the suspect was wearing gloves.

1  used against him at trial as examples of evidence that would be
2  considered "testimonial" under the Confrontation Clause. Id. The
3  Court provided examples of "testimonial" evidence, including "*ex parte*
4  in-court testimony or its functional equivalent -that is, material such
5  as affidavits [or] custodial examinations." Id.
6      In Melendez-Diaz v. Massachusetts, the Supreme Court further
7  clarified the Crawford definition of "testimonial" evidence. Melendez-
8  Diaz v. Massachusetts, 129 S.Ct. 2527, 2531-32 (2009). The Court found
9  that "certificates of analysis" showing the results of a forensic
10 analysis on the contents of a substance were, in effect, affidavits of
11 the state laboratory analysts testifying to the nature of a substance.[4]
12 Id. The affidavits reported the weight of the seized bags and stated
13 that the bags "have been examined with the following results: The
14 substance was found to contain: Cocaine." Id. at 2532. The
15 certificates were certified by a public notary one week after the tests
16 were performed. Id. The Supreme Court stressed that the laboratory
17 analysts did not testify at trial and the defendant did not know which
18 tests were performed, whether any tests performed were routine, or
19 whether the interpretation of any test results required the exercise of
20 judgment of the use of skills that analysts may not have possessed.
21 Id. at 2537. The Melendez-Diaz Court found "affidavits were
22 testimonial statements . . . and absent a showing the analysts were
23 unavailable to testify at trial and that petitioner had a prior
24 opportunity to cross-examine them, petitioner was entitled to be

---

[4] In determining the "certificates" were in fact affidavits, the Court looked to the Black's Law Dictionary definition of affidavit: "Declarations of facts written down and sworn to by the declarant before an officer authorized to administer oaths." Melendez-Diaz, 129 S.Ct. at 2532.

confronted with the analysts at trial." Id. at 2532.

Melendez-Diaz was a five-to-four decision. Id. at 2530. In casting the deciding vote, Justice Thomas wrote a separate concurring opinion to emphasize he joined the majority because the certificates were "quite plainly affidavits." Id. at 2543 (Thomas, J., concurring). Justice Thomas stressed that the "Confrontation Clause is implicated by extrajudicial statements only insofar as they are contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions." Id.

In this case, for the purposes of Petitioner's claim for habeas relief, an application for a writ of habeas corpus may not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law. 28 U.S.C. § 2254(d). When determining whether a state court's decision is contrary to, or an objectively unreasonable application of, clearly established Federal law as decided by the Supreme Court, the Court must examine the Supreme Court's decisions "as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). Additionally, Teague v. Lane, 489 U.S. 288, 310 (1989) instructs courts that "'old' rules of criminal procedure apply 'both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review.'" Butler v. Curry, 528 F. 3d 624, 633 (9th Cir. 2008) (quoting Whorton v. Bockting, 549 U.S. 406, 416 (2007)).

Magistrate Judge Walsh suggests that Melendez-Diaz may have

created a "new rule" of constitutional criminal procedure in 2009 when holding that forensic laboratory reports constitute testimonial hearsay. (Final R&R, Dkt. # 37 at 22). Consequently, if the 2009 Melendez-Diaz holding was in fact a "new rule" of constitutional criminal procedure, then Teague would dictate that Melendez-Diaz's "new rule" would not be retroactively applicable as clearly established federal law in Petitioner's case.[5] Magistrate Judge Walsh suggested the Melendez-Diaz rule may be categorized as "new" because (1) Petitioner's case became final in 2006, years before Melendez-Diaz was decided in 2009; (2) language in the dissenting opinion of Melendez-Diaz refers to the court's "new rule;" and (3) various district court cases have found Melendez-Diaz to have announced a new rule that would not apply retroactively to cases on collateral review. (Final R&R, Dkt. # 37 at 22).

The Court does not find this suggestion persuasive. When a general rule must be applied in a new situation, 'it can hardly be thought to have created a new principle of constitutional law.'" Butler v. Curry, 528 F.3d 624, 633 (9th Cir. 2008) (quoting Tanner v. McDaniel, 493 F.3d 1135, 1144 (9th Cir. 2007)). In Melendez-Diaz, rather than create a "new rule," the Supreme Court merely applied Crawford's 2004 general rule barring testimonial evidence to a new set of facts. Although Melendez-Diaz's holding may have involved facts more analogous to Wallis's testimony regarding Reynolds's lab report during Petitioner's trial than Crawford, the holding in Melendez-Diaz is better characterized as an application of the Crawford rule of

---

[5] Petitioner's case became final in 2006. (Final R&R, Dkt. # 37 at 22).

constitutional criminal procedure rather the creation of an entirely "new rule." This position is reinforced by the Melendez-Diaz majority explicitly noting the Court's holding was a "rather straightforward application of our holding in Crawford." Melendez-Diaz, 129 S.Ct. at 2533.

Moreover, two district court cases cited by Magistrate Judge Walsh merely assume that Melendez-Diaz created a "new rule." In Louder v. Coleman, No. 09-1124, 2009 WL 4833193 (W.D. Pa. 2009), the Court made it clear that the issue of retroactive applicability of Crawford or Melendez-Diaz to cases on collateral review was "not necessary to [their] dispositon." Louder v. Coleman, No. 09-1124, 2009 WL 4833193, at *1 (W.D. Pa. 2009). Further, to the extent Larkin v. Yates characterized Melendez-Diaz as a new rule under Teague, the court was merely assuming that Melendez-Diaz did not apply for purposes of making an argument in the alternative. Larkin v. Yates, No. CV 09-2034-DSF (CT), 2009 WL 2049991, at *1 (C.D. Cal. July 9, 2009). Contrary to standing for the proposition that Melendez-Diaz created a new rule, Larkin's discussion largely relies on a finding that Teague does not bar Melendez-Diaz. Id. at *1-3. Finally, although Wilbourn v. Johnson holds that Melendez-Diaz would be barred by Teague as a new rule, this Virginia district court case is not binding on this Court. Wilbourn v. Johnson, No. 7:09CV00487, 2010 WL 785615 (W.D.Va. 2010).

Having clarified that the Melendez-Diaz decision would not be a "new rule," the Court could find that the lab report was "testimonial" and should have been barred in Petitioner's trial.[6] However, the Court

---

[6] It is arguable whether the lab report itself – even if it was actually admitted into evidence – would be "testimonial" under Melendez-Diaz. In Melendez-Diaz, Justice Thomas' concurrence

10

need not reach this issue in this case.  Regardless of whether the evidence admitted during Petitioner's trial was testimonial under Melendez-Diaz, the Court agrees with Magistrate Judge Walsh's ultimate conclusion that the California Court of Appeal's 2006 interpretation of Crawford labeling the evidence of Reynolds's lab report as "non-testimonial" was not objectively unreasonable.  (Final R&R, Dkt. # 37 at 23).   Though the Melendez-Diaz opinion followed the 2006 California Appellate Court's ruling, the fact that four Supreme Court Justices in the Melendez-Diaz minority argued that the affidavits testifying to the nature of a substance were non-testimonial is persuasive in finding the California Court of Appeals was not objectively unreasonable.  Melendez-Diaz, 129 S.Ct. at 2543 (Kennedy, J., dissenting).  Further, prior to the California Court of Appeal's decision, courts in numerous other jurisdictions had come to similar conclusions that various forensic test results were non-testimonial.  See United States v. Ellis, 460 F.3d 920, 926-27 (7th Cir. 2006) (finding certificate prepared by lab tech indicating methamphetamine in blood and urine to be a non-testimonial statement); State v. Forte, 360 N.C. 427, 435 (2006) (unsworn reports containing objective analysis of agent who

---

explicitly noted his position that "the Confrontation Clause is implicated by extrajudicial statements only insofar as they are contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions."  Melendez-Diaz, 129 S. Ct. at 2543 (Thomas, J. concurring) (quotations omitted).  The lab report in this case states a mechanical result – that the substance found was determined to be cocaine.  As noted in the trial transcript, filling out the lab report was merely a "matter of checking boxes or writing down the type of tests that were performed" along with the results of the tests.  (RT 190).  The mechanically filled out lab report in this case does not appear to fall in the category of "affidavits, depositions, prior testimony, or confessions."

identified the fluids found at crime scene were non-testimonial); State v. Lackey II, 280 Kan. 190, 214 (2005) (medical examiner's statements in an autopsy report were non-testimonial); Commonwealth v. Verde, 444 Mass. 279, 284 (2005) (finding two certificates of chemical analysis from medical laboratory identifying composition and quantity of a substance found in possession of defendants as cocaine were non-testimonial); State v. Dedman, 136 N.M. 561, 569 (2004) (nurse's blood alcohol report prepared in accordance with routine measures of preparation was non-testimonial).

\\
\\
\\

## V. Conclusion

Aside from the clarifications regarding Petitioner's allegation of Prosecutorial Misconduct and the Confrontation Clause's applicability, the Court adopts Magistrate Judge Walsh's Report and Recommendation in its entirety. Further, the Court concludes that its decision as to Ground Seven of the Petition – that Petitioner's Confrontation Clause rights were not violated by the introduction of lab results without the opportunity to cross-examine the technician who performed the analysis – is "debatable amongst jurists of reason." See Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). As a result, the Court finds that Petitioner is entitled to a certificate of appealability as to that issue. See 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b). As to the remaining claims raised in the Petition, the Court finds that Petitioner has not made a

1  substantial showing of the denial of a constitutional right and,
2  therefore, he is not entitled to a certificate of appealability as to
3  them.

      IT IS SO ORDERED.

DATED: December 28, 2010

                    STEPHEN V. WILSON
             UNITED STATES DISTRICT JUDGE